D. M. BROWER, *Appellee*, v. THE WESTERN UNION
TELEGRAPH COMPANY, *Appellant.*

No. 16,109.

SYLLABUS BY THE COURT.

1. EVIDENCE — *Opinion — Facts upon which a Conclusion is Based Stated.* On the trial of a case involving the care of cattle during a delay in the shipment thereof it is not reversible error, after a witness has detailed all that was done and the difficulties which he claims prevented doing more, for the court to refuse to strike out an expression to the effect that he did the best he could under the circumstances. Nor in such case is it material error to permit a witness to testify that "we shipped the cattle as soon as we could," after relating the circumstances that he claimed delayed the shipment.

2. INSTRUCTIONS — *Contributory Negligence — Inference — Evidence.* An instruction which implies that a certain fact would constitute contributory negligence and diminish the damages claimed should be refused unless there is some evidence fully to sustain such assumption or implication.

3. SPECIAL FINDINGS—*Consistency—Waiver.* After a jury has returned a general verdict and special findings of fact, and the jury is discharged without any motion for more specific answers to the questions submitted, a motion for a new trial on the ground that certain findings are irreconcilable should be denied if the findings can fairly be reconciled under the evidence produced or by assuming the negative of a fact or facts the burden of proving which devolved upon the moving party, where he has failed to produce any evidence thereof.

Appeal from Edwards district court; CHARLES E. LOBDELL, judge. Opinion filed November 6, 1909. Affirmed.

*George H. Fearons, Charles Blood Smith,* and *Samuel Barnum,* for the appellant.

*F. Dumont Smith,* for the appellee.

The opinion of the court was delivered by

SMITH, J.: D. M. Brower, the plaintiff, bought of one O. J. Brown 125 head of native western cows, which at the time of the contract of sale were about

seventeen miles from Garden City, Kan., and by the terms of the sale Brown was to deliver the cattle in the stockyards at Garden City about November 1. On the first day of November Brown delivered to the agent of the defendant, at Garden City, and paid for its transmission, the following telegram:

"GARDEN CITY, KAN., November 1, 1906.
"*To D. M. Brower, Lewis, Kan.:*
"Cars are here. Cows will be Friday. Come to-night.                    O. J. BROWN."

The plaintiff resided just across the street from the station limits in Lewis, Kan., and also had a business house in Lewis. He had lived there four years, and was acquainted with the telegraph agent at that place. But for some reason not shown the telegram was not delivered. The plaintiff had authorized Brown to secure cars for him for the shipment of the cattle from Garden City to Lewis, and the cars were at Garden City at the time the telegram was sent.

On the morning of November 2 Brown drove the cattle to Garden City, where he arrived about three o'clock in the afternoon, and placed them in the shipping yards of the railroad company. This was on Friday. The cattle remained in the shipping yards without feed or water until about three o'clock of the following afternoon, and owing to frequent rains the shipping yards, as well as the roads generally in that locality, were deep with mud. On Saturday afternoon Brown moved the cattle to a pasture, which had been grazed during the summer, in which there was plenty of water but very little grass. Also, on Saturday afternoon he sent another telegram to the plaintiff notifying him that the cars and the cows were at Garden City. This was the first information the plaintiff received of the intended or actual delivery of the cattle, and he took the next train for Garden City, where he arrived about one o'clock Sunday morning. On Sunday he procured a load of wet sorghum, which was fed

to the cattle.  This was the only feed given the cattle during their detention at Garden City, from the time they arrived there until they were loaded, about four o'clock Monday afternoon.

It required four cars to ship the cattle, and before the plaintiff's arrival the railroad company had used two of the four cars ordered for the plaintiff in shipping other cattle.  However, another car was placed on the track for the plaintiff's use Saturday evening, and three carloads of the cattle could have been shipped on Sunday, but the plaintiff did not desire to divide the shipment and waited until another car was placed at his disposal, on Monday.  There was testimony that there was no switch engine in the yards at Garden City on Sunday, and that only with difficulty, if at all, could the three cars have been moved to the chute by the plaintiff to be loaded on that day.  There was also evidence that during the detention of the cattle at Garden City there was an abundance of grain for sale in the city that could have been procured for feeding the cattle; also, that there was plenty of rough feed out in the country; but Brown testified that he could not procure anyone to haul feed other than was done, and the plaintiff said he offered twice the usual price for rough feed and was unable to procure any more.

The case was tried to a jury, which returned special findings of fact, and a general verdict in favor of the plaintiff for $500 damages.  The defendant brings the case here, and makes thirty-seven assignments of error.

After the return of the verdict and the special findings, the jury having found that there was a shrinkage in the weight of the cattle of seventy-five pounds per head from the time they arrived in Garden City until they were shipped out, and that there should be allowed for depreciation in the value of the cattle $6.40 per head, the plaintiff moved to amend the prayer of his petition by changing the amount for which judgment

was asked from $500 to $800, and for judgment for the latter amount. This motion the court denied, and the plaintiff files a cross-petition alleging that in such ruling the court erred to his prejudice. Disposing of this contention first, it is to be said that the court heard the evidence, and also had the general verdict of the jury, and in refusing the amendment prayed for it may be inferred that the court disapproved the special findings in so far as they indicated the amount of damages in excess of the amount returned in the general verdict. At any rate the allowance of the proposed amendment after a general verdict is a matter of discretion, and in this instance there was no error.

Turning to the assignments of error made by the defendant, it is not possible within reasonable scope, nor is it necessary, to discuss each of the numerous assignments of error separately. The second, fourth, fifth and seventh objections run to the ruling allowing witnesses to give opinion evidence. After stating the facts and surrounding circumstances, one witness was allowed to say that the best he could do with the cattle on Saturday was to take them to pasture. Again, after stating the facts, a witness was allowed to say that the cattle were shipped at the earliest possible moment. Another witness was allowed to say, after stating the facts, that the wet sorghum was the only feed for the cattle he was able to get. Again, witness Brown, after stating the facts in regard to the sale, was allowed to give his understanding of the purpose for which the cattle were purchased. Whatever conclusions there may be in these answers they were not prejudicial, the facts being stated upon which the opinions were based. The jury were placed in position to form their own conclusion. The conclusion of the witness was only pertinent as showing his good faith.

As a general proposition, it is true that a witness should not be allowed to give opinions as to matters of general knowledge and in no way relating to special

skill and learning.  But the defendant undertook in this case to show that the plaintiff and his agent did not exercise ordinary care to guard against the damage which the failure to deliver the message had occasioned.  And after detailing what had been done with the cattle from time to time, from their arrival at Garden City until they were shipped, it can not be said that it was prejudicial error for the caretakers to say that under the conditions detailed they did the best they could or shipped at the earliest possible time.

In regard to the opinion evidence regarding the shrinkage in weight of the cattle, this is a very proper subject for expert testimony, the witnesses having qualified to speak thereof.

Again, the defendant makes eleven assignments of error on the refusal to give certain instructions requested.  In its brief, however, the defendant presents only four of these objections, namely, requests for instructions numbered $1\frac{1}{2}$, 4, 9, and 14.  The first three of these requested instructions read as follow:

"($1\frac{1}{2}$) If you find that the plaintiff could without extraordinary effort have set the cars that were at Garden City on his arrival there at the chute and loaded out a portion of his cattle, then he can not claim damages on such of the cattle as he could have loaded out after the time he could have so sent them forward to their destination.

"(4) You are instructed that the defendant can not be charged with the failure of the railroad company to have a switch engine at Garden City to set cars at the chute so that the plaintiff's cattle could be loaded in the cars, and, if you find that the delay in the shipment was caused in part by the negligence of the railway company to have a switch engine at Garden City, then such portion of the delay and the consequent depreciation, if any you find, on the cattle can not be charged against the defendant.

"(9) If the plaintiff could have shipped a part of his cattle from Garden City, and failed to do so, and there was a consequent loss on the portion which he might

sooner have shipped out, then the defendant can not be charged with such portion of the loss."

The defendant properly discusses instructions numbered $1\frac{1}{2}$ and 9 together. As regards these two instructions, the evidence showed after the arrival of the plaintiff at Garden City there was not a sufficient number of stock cars in the yards to ship all the cattle until the time they were shipped, and at that time there was an engine there to place the cars at the cattle chute, and they were so placed by the engine and the cattle were shipped. It is not a question of law, but is a question of fact, whether under all the circumstances it would have saved damage by shipping three carloads of the cattle on Sunday, or whether it was most advantageous to the plaintiff and to the defendant to wait until Monday and ship the cattle all together. So far as the plaintiff was concerned, at least, he could not accompany a shipment of a part of the cattle to Lewis and at the same time remain in Garden City to ship the remainder. If he shipped a part, there is nothing to show whether it was necessary, and if necessary whether he was able, to procure some one to accompany the second shipment. If the question involved in these two instructions had been submitted to the jury as a question of fact we think it would have been very proper, but we can not say as a proposition of law that, if it was possible to get the three cars to the chute and load them out on Sunday, under all of the circumstances it would have saved any loss. Of course, it was the duty of the plaintiff, after he discovered that the agent of the defendant had failed in his duty to deliver the message and that by the negligence of the agent he was about to suffer damage, to use such care and diligence as a person of ordinary prudence under the circumstances would have used to prevent the threatened damage, or to minimize it. But, as before stated, we do not think that it can be asserted as a proposition of law, upon the evidence, that a division of the shipment would have minimized the damages.

The same criticism applies in a measure to requested instruction No. 4. It is based upon the assumption that a division of the shipment would have minimized the damage. Besides, we are not prepared to say that where a party to a suit is charged with negligence which, if established, is the primary and principal cause of resulting damages, such party can reduce the amount of such damage by showing that the act of some other person, not a party to the suit, by an omission of duty in some measure contributed to the loss. There is no evidence that a switch engine was usually kept at Garden City or that Brown had any authority from the plaintiff to pay demurrage on the cars which were diverted to other shipments. The principal part of the purchase price for the cattle was to be paid when they were delivered at the stockyards. And upon the failure of the plaintiff to respond to the first telegram Brown seems to have been left in doubt as to whether the plaintiff would take the cattle at all, or as to what the trouble was. The evidence does not seem to indicate any negligence on the part of the railroad company. So far as appears, it was under no obligation to hold cars at the station of Garden City after the time of the shipments for which they were ordered. And the evidence does not show that it was negligence for the railroad company not to have a switch engine at that station. It is not shown to be a division station. The difficulties in regard to procuring cars and shipping the cattle were just such as might reasonably have been anticipated from the failure to deliver the telegram. The telegram itself was information to the defendant that the personal presence of the plaintiff was required. And it had ample opportunity to know of the rules or practice of the railroad company as to holding cars after the time for which they were ordered for shipments. We find no error in refusing these instructions.

Again, the company urges there was error in the re-

fusal to give the following instruction: "Under the evidence in this case you are instructed that you can return a verdict against the defendant for not more than nominal damages." The defendant contends that the injury done to the cattle was not of a permanent nature, but only temporary, and that the evidence shows they could have been brought to the condition in which they were at the time they were brought to the stockyards for trifling expense, and that the ordinary rule of measuring damages, to wit, the value immediately before and immediately after the happening of the circumstances which are alleged to have caused the damage, is not the proper rule for measuring damages in this case; also, that the evidence shows the cattle were not bought for immediate sale on the market, but were bought to be kept for breeding purposes. The objection seems to be founded principally upon the evidence of the plaintiff set forth in the abstract as follows:

"At the time the cattle were brought to Garden City they were worth about $2.25. They were worth about $1.60 per hundred at the time they were shipped out Monday. It would require about ten bushels of extra grain, owing to this shrinkage, to carry them through and get them in proper condition."

The defendant seems to construe the last sentence of this quotation to mean that it would require only ten bushels of extra grain on account of shrinkage to carry all the cattle through and put them in proper condition. As well might the first sentence of the quotation be interpreted to mean that the entire bunch of cattle at the time they were brought to Garden City was worth only $2.25. The jury undoubtedly understood a cattleman's vernacular, and that the witness meant that the cattle were worth when they arrived at Garden City $2.25 per hundred pounds, and that by reason of the shrinkage it would require ten bushels of extra grain per head to carry the cattle through and get them in proper condition. This would be a reasonable interpretation.

The jury had a right to take into consideration such matters as are of general and common knowledge. And it would certainly appear to be common knowledge that less than one-twelfth of a bushel of grain would be a very small extra ration for one feed to a cow. We have, then, by the evidence of different witnesses an estimated shrinkage of from 75 to 125 pounds per head by reason of the delay in shipment incident to the failure to deliver the telegram, and a depreciation in the value of the cattle by reason of such shrinkage of from 40 to 70 cents per hundred pounds. This estimate of the value per hundred pounds was not based by any of the witnesses upon the selling value of the cattle at a cattle market, but appears to have been upon the value of the cattle for any and all purposes at Garden City at the time in question. This, we think, was a proper measure of damages, no special circumstances or objects being shown for which the cattle were purchased. If, however, the understanding of Brown that they were bought for breeding purposes should be considered, then we have another measure of damages, which might be the value of 1250 bushels of corn, including the expense of feeding it to the cattle. But there is no evidence, so far as the abstract shows, as to the value of such corn nor the expense of feeding it. In any event, it is a matter of common knowledge that such values would be more than merely nominal. We think the instruction was correctly refused.

The rule as to the measure of damages in this case has been recognized in the following cases: *C. K. & N. Rly. Co. v. Broquet,* 47 Kan. 571, 572; *Railroad Co. v. Noland,* 75 Kan. 691; *Railway Co. v. Weidenmann,* 77 Kan. 300, 302; *Railway Co. v. McDowell,* 78 Kan. 686. The cases cited by the defendant, *Gillett v. Western Railroad Corporation,* 90 Mass. 560, and *Graessle v. Carpenter,* 70 Iowa, 166, and generally the other cases cited, were cases evidently in which the injury had been entirely repaired or cured, and are not pertinent to this case.

We have considered the objections to the refusal of the court to submit certain questions asked to be submitted by the defendant, and for reasons hereinbefore indicated, as to the lack of evidence on the part of the defendant that it would have diminished the damages by dividing the shipment and as to the lack of evidence that the railroad company was guilty of negligence, we think no error can be predicated upon such refusal.

No motion was made to strike out any of the findings of fact made by the jury or to have the jury make more specific answers to any questions.

On the motion for a new trial and for judgment in favor of the defendant it was contended that findings numbered 24 to 27, inclusive, which are in substance that neither the plaintiff nor Brown could by the exercise of reasonable efforts have procured sufficient feed for the cattle while they were in Garden City, are irreconcilable with the answer to finding No. 21, which was in substance that there was plenty of feed for cattle for sale in and about Garden City at the time. The evidence is that there was plenty of grain for sale in Garden City at the time, but there is no evidence that such feed, in the condition of those cattle, just returned from pasture, would not have been an injury instead of a benefit to the cattle. And there was no evidence that there were any facilities available for feeding grain to the cattle. As to the feed in the country about Garden City, the evidence fully explains why that was not produced. Finding No. 21 is not necessarily inconsistent or irreconcilable with findings numbered 24 to 27, inclusive.

The judgment is affirmed.